**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

Paul John Apodaca, Jr.,

    Plaintiff,

vs.

Commissioner of Social Security
Administration,

    Defendant.

No. CV-18-04086-PHX-SPL

**ORDER**

  Plaintiff Paul John Apodaca, Jr. seeks judicial review of the denial of his application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g). Plaintiff argues that the Administrative Law Judge ("ALJ") erred by according inadequate weight to the opinion of his treating physician and rejecting his subjective complaints (Doc. 15 at 1–2).

  A person is considered "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008). "Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "It means such

relevant evidence as a reasonable mind might accept as adequate to support a conclusion."
*Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The Court must review the record as a whole and consider both the evidence that supports and the evidence that detracts from the ALJ's determination. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

## I. DISCUSSION

### A. PLAINTIFF'S SYMPTOM TESTIMONY

Plaintiff argues the ALJ erred in rejecting Plaintiff's symptom testimony (Doc. 15 at 21–27). In evaluating a claimant's testimony, the ALJ is required to engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide whether the claimant has presented objective medical evidence of an impairment reasonably expected to produce some degree of the symptoms alleged. *Id.* If the first test is met and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing specific, clear, and convincing reasons for the rejection. *Id.* Here, the ALJ found Plaintiff's medical impairments could reasonably be expected to cause some of the alleged symptoms, but concluded that his statements as to the intensity or limiting effects of those symptoms were not entirely credible (AR 59).[1]

"In determining credibility, an ALJ may engage in ordinary techniques of credibility evaluation, such as considering claimant's reputation for truthfulness and inconsistencies in claimant's testimony." *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005). Here, the ALJ found Plaintiff's daily living activities, the effectiveness of treatment, and the objective medical evidence illustrated that Plaintiff possessed greater functional abilities than he alleged (AR 59).

### 1. DAILY ACTIVITIES

Plaintiff's testimony indicates that he is often bed ridden. Plaintiff noted in a Function Report that he is "mostly in bed 16 hours a day," (AR 272) and testified at the disability hearing that he is in bed three days a week from overexertion after attempting to

---

[1] Administrative Record (Doc. 11).

spend any time with his family (AR 120, 122). He further stated he can only sit for two to three hours at a time before needing to lay down from spinal pain (AR 121), can stand for an hour with the assistance of a cane,[2] and can walk for up to a maximum of two blocks.

The ALJ found, however, that Plaintiff's daily activities demonstrated he is more able bodied than he alleged, noting he routinely "takes care of his personal hygiene, prepares simple meals, does laundry, drives short distances, and grocery shops." (AR 59). The ALJ further noted that Plaintiff regularly interacts with family, attends family functions, talks on the phone, and uses a computer (AR 59). Finally, the ALJ noted his hobbies consist of watching television, singing, and listening to music (AR 59).

With respect to personal hygiene, the Court is unclear how the cited portions of the record contradict Plaintiff's subjective complaints, as Plaintiff stated in his Functions Reports that bathing is "extremely difficult," he often requires assistance, and he urinates in a cup or otherwise requires help when using the toilet (AR 273, 309). The record also provides that if Plaintiff's wife doesn't prepare his meals, he eats microwavable or canned food (AR 273, 309); he can help with laundry 10% of the month when his pain meds allow enough mobility (AR 274); his wife and step-daughter do all of the household chores (AR 274, 310); his mother does the yardwork (AR 116); his wife drives him to medical appointments (AR 117, 274); he occasionally drives a few blocks to pick up his step-daughter when she has early pick-up at school, which requires him to scale back on his medication 24 hours before driving (AR 117); he will grocery shop 1–3 times a month to pick up medication or single items (AR 274, 310); attends family gatherings and major holidays with family once a month (AR 275); and uses a phone or computer 1–2 times a day for one minute to one hour depending on his pain level (AR 275). He further testified that his pain medication provides him with up to a couple hours of relief (AR 96, 101), but that he if takes advantage during those periods he will later end up "paying the price" for any overexertion (AR 131).

---

[2] Plaintiff further noted that standing in such a way is "not without extreme pain." (AR 122).

3

With respect to relying on a claimant's daily activities, "[t]he Social Security Act does not require that claimants be utterly incapacitated to be eligible for benefits." *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989); *see, e.g.*, *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (awarding benefits for back and leg pain despite claimant's ability to cook and wash dishes). The fact that Plaintiff attempts to perform basic living activities does not equate to the level of evidence required to find the allegation of pain to be incredible. *See Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998) ("[D]isability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. . . . Only if the level of activity were inconsistent with Claimant's limitations would these activities have any bearing on Claimant's credibility"). "The critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as she would be by an employer." *Bjornson v. Astrue*, 671 F.3d 640, 647 (7th Cir. 2012). Contrary to the ALJ's findings, nothing in the record indicates that Plaintiff is able to spend a substantial part of his day engaged in physical functions that are transferrable to the workplace, or that he is able to do so without breaks or rest. *Fair*, 885 F.2d at 603. Moreover, it is unclear to the Court how those activities actually conflict with his subjective symptoms. The Court thus finds the ALJ's reliance on Plaintiff's daily living activities to be an insufficient reason for rejecting his subjective complaints.

## 2. EFFECTIVENESS OF TREATMENT

In rejecting Plaintiff's subjective symptom testimony, the ALJ also relied on portions of the medical record demonstrating Plaintiff responded well to treatment and that his pain was adequately controlled with medication (AR 59). *See* 20 C.F.R. § 404.1529(c)(iv) (providing that medication is considered in evaluating symptom testimony).

To support this finding, the ALJ referred to a few notations in the medical records that (1) despite decreased strength in his lower extremities, Plaintiff still had "[n]ormal

range of motion" (AR 58, 429, 433); (2) physical examinations showed "normal strength, tone, and gait with no tenderness" (AR 58, 718, 722, 734–35); and (3) he reported certain medications worked well to control his pain and increase his functionality (AR 58, 535, 928, 932, 936).

First, the ALJ's reliance on Plaintiff's improvement with pain medication as a means of discounting his subjective testimony was improper. Findings that Plaintiff experienced brief respites from pain does not negate concurrent medical findings of persistent, chronic, or worsening pain. In fact, the Court finds the ALJ misrelied on certain medical findings, taking certain notations out of context. For example, the ALJ specifically found that "[w]ith prescribed medications, a treating doctor observed, 'Pain control allowing him to function in a high-level physically and improve his quality of life.'" (AR 58). Looking at that medical record, however, the full notation provides as follows: "We reviewed potential side effects of his medication as well as *goals of therapy* including [p]ain control allowing him to function in a high-level physically and improve his quality of life." (AR 802) (emphasis added). That same record also notes that Plaintiff rated his pain at a 10 out of 10 after running out of morphine, his pain is chronic and occurs constantly, and the problem has been worsening since its onset (AR 800). Based on the totality of the circumstances, the Court finds that the ALJ's narrow reliance on certain responses to pain management treatment is insufficient and fails to address all of the relevant evidence in the record. (*see* AR 793 ("The medications continue to provide improvement in his pain level, although he still has daily pain which has a significant impact on his daily living.")). Second, although certain treatment notes described Plaintiff as presenting with normal strength, tone, and gait, the ALJ has not explained how such findings are inconsistent with Plaintiff's subjective symptoms.

### 3. MEDICAL EVIDENCE

Finally, to the extent the ALJ concluded that Plaintiff's allegations regarding the severity of his pain was not supported by the medical evidence of record, this reason alone cannot suffice. The Ninth Circuit has held that "once the claimant produces objective

medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based *solely* on a lack of objective medical evidence to fully corroborate the alleged severity of pain." *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) (emphasis added). This rule recognizes that "pain is a subjective phenomenon," and it "cannot be objectively verified or measured." *Id*. (citation omitted). Accordingly, the Court finds that the ALJ lacked specific, clear, and convincing reasons to reject Plaintiff's symptom testimony.

## B.  MEDICAL OPINION OF STEPHEN C. HAMMETT

Plaintiff also argues that the ALJ accorded inadequate weight to the opinion of Plaintiff's primary care physician, Stephen C. Hammett, D.O. (Doc. 15 at 16–21).

> To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence.  If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.

*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (internal citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

The ALJ provided three reasons for giving Dr. Hammett's opinion little weight: (1) he relied, in part, on Plaintiff's subjective complaints; (2) he is a general practitioner as opposed to a specialist in functional examinations; and (3) the medical records show Plaintiff had a normal gait and intact neurological findings (AR 59).  The ALJ further gave Dr. Hammett's statements that Plaintiff "remains unable to work" no weight as a finding of disability is reserved for the Commissioner (AR 59).

### 1.  SUBJECTIVE COMPLAINTS

First, the ALJ gave Dr. Hammett's opinions little weight as he relied, in part, on Plaintiff's subjective complaints (AR 59).  Basing a medical opinion, in part, on subjective complaints, however, "hardly undermines [the] opinion as to [the patient's] functional

limitations, as '[a] patient's report of complaints, or history, is an essential diagnostic too.'" *Pontzious v. Berryhill*, No. 3:16–cv–8274–HRH, 2017 WL 6276371, at \*4 (D. Ariz. Dec. 11, 2017) (citation omitted). Here, there is no evidence of malingering, the Court has already found the ALJ's rejection of Plaintiff's subjective complaints to be unavailing, and the ALJ has cited no actual evidence of impropriety. *See Lester v. Chater*, 81 F.3d 821, 832 (9th Cir. 1995) ("The Secretary may not assume that doctors routinely lie in order to help their patients collect disability benefits." (citation omitted)). The Court thus finds this reasoning to be insufficient.

## 2. GENERAL PRACTITIONER

The ALJ also gave Dr. Hammett's opinions little weight based on his occupation as a "general practitioner" as opposed to a "specialist in functional examinations." (AR 59). In determining the weight to give a treating source's medical opinion, the ALJ must consider the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, the supportability of the opinion, the consistency of the opinion with the record as a whole, specialization, and other relevant factors. *See* 20 C.F.R. § 404.1527(c). Although Dr. Hammett's lack of specialization is one consideration, the Court finds that, absent a weighing of the remaining factors, it alone does not establish a sufficient and legitimate reason to give Dr. Hammett's opinion little weight. *See Price v. Colvin*, 635 F. App'x 379, 380 (9th Cir. 2016).

## 3. MEDICAL EVIDENCE

Finally, the ALJ assigned little weight to Dr. Hammett's opinion based on "medical records showing a normal gait and intact neurological findings." (AR 59). In doing so, however, the ALJ failed to cite evidence in the record that explains how these findings undermine Dr. Hammett's conclusions regarding the severity of Plaintiff's pain and the limitations caused thereby. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."); *see also Rawa v. Colvin*, 672 F. App'x 664, 667 (9th Cir. 2016) (finding the ALJ erred in rejecting the

claimant's testimony regarding pain based on a lack of muscle atrophy and stating "[i]t is beyond the scope of the ALJ's authority to offer such a medical opinion based solely on his own personal speculation."); *Johnson v. Comm'r of Soc. Sec. Admin.*, 2019 WL 1375688, at *2 (D. Ariz. Mar. 27, 2019) ("The ALJ cites evidence that Plaintiff demonstrated normal range of motion, muscle strength, and gait, but these evaluations are not the same as the treating physician's assessments of severe chronic pain, which is supported by substantial evidence in the record by way of extensive treatment notes."); *Curtis v. Comm'r of Soc. Sec. Admin.*, No. CV–18–00649–DGC, 2018 WL 5418486, at *7 (D. Ariz. Dec. 6, 2018) ("But the ALJ fails to explain why the normal findings do not support Plaintiff's general pain testimony or why the normal findings should be given more weight than the abnormal findings."). Because the ALJ failed to explain how her reasoning is supported by evidence in the record, it cannot serve as specific and legitimate reasoning to reject Dr. Hammett's opinion.

## C. CONCLUSION

It is in this Court's discretion to reverse and remand for an award of benefits or further proceedings. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). The credit-as-true rule requires a court to remand for calculation and award of benefits rather than a remand for further proceedings when: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020. However, "even [if] all conditions of the credit-as-true rule are satisfied," a court may remand for further proceedings if "an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled." *Id.* at 1021.

Here, all three conditions of the credit-as-true rule are met: (1) the ALJ failed to provide legally sufficient reasons for rejecting Dr. Hammett's opinion and Plaintiff's subjective testimony; (2) the record has been fully developed, and as a result, a remand for

further proceedings would not be useful; and (3) based on the vocational expert's testimony, the ALJ would have been required to find Plaintiff disabled had she credited Dr. Hammett's opinion.  Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for an award of benefits.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 12th day of March, 2020.

Honorable Steven P. Logan
United States District Judge